IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Charlie B. Jones, Jr., )<br>)<br>Plaintiff, )<br>)<br>**)**<br>vs. )<br>)<br>Jo Anne B. Barnhart, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Civil Action No. 8:05-3098-CMC-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Charlie B. Jones, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff is 45 years old. The plaintiff has a tenth grade education and past relevant work as a spray painter/sandblaster. He allegedly became disabled on February 26, 2002, when he was struck by a steel beam on the top of his head. On September 19, 2002, the plaintiff underwent a fusion after the cervical discectomy of two discs. (Tr. 93.) A second fusion was necessary. (Tr. 136.) After the second fusion surgery, the plaintiff's

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

discharge diagnosis was right hemiparesis. (Tr. 139.)  The plaintiff's treating surgeon, Don Stovall, M.D., ultimately opined that the plaintiff had a 40% impairment to his whole person and that he could not lift overhead or grip with his right hand on a permanent basis. (Tr. 196.)

The plaintiff filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401- 433, in July of 2003 (R. 53) alleging an onset of disability of February 26, 2002.   The plaintiff's application was denied initially and upon reconsideration. (Tr.  22-34.)  An administrative hearing was held on May 27, 2005 (Tr.  213-37), and the Administrative Law Judge (ALJ) found, in a decision dated July 21, 2005 (Tr.  13-20) that the plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with restrictions and was not disabled (Tr. 19-20).  The Appeals Council denied the plaintiff's request for review (Tr. 5-7), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

The ALJ  found, in it's July 21, 2005, decision (Tr. 13-20), the following:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth n Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's degenerative disc disease of the cervical spine, status post anterior cervical discectomy and fusion at C5-C7 and revision with right upper extremity residual weakness are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the residual functional capacity to perform sedentary exertional work; restricted against climbing, crawling and balancing with the need to avoid exposure to workplace hazards, such as dangerous machinery or unprotected heights; requiring a sit/stand option at will ;no complex reading required; no more than occasional fingering and handling with the dominant right hand/arm, and no overhead reaching with the dominant right hand/arm.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8. The claimant's is a "younger individual" (20 CFR § 404.1563).

9. The claimant has "a limited education" (20 CFR § 404.1564).

10. The transferability of skills is not an issue in this decision.

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404-1567).

12. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.25 as a framework for decision-making, there are a significant number o f jobs in the national economy that he could perform. Examples of such jobs include work as a surveillance systems monitor (DOT #379.307.010, sedentary unskilled SVP 2) with 237,300 such jobs in the nation and 540 in South Carolina; and as inspector, sorter and weight tester (DOT # 539.485.010, sedentary, unskilled SVP 2) with 128,850 such jobs in the nation, and 3,147 in South Carolina

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(g)).

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals

an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) the evaluation of his pain; (2) failing to discuss significant evidence by Dr. Hutchinson and Dr. Faaberg; (3) failing to comply with SSR 00-4p; and (4) violating the treating physician rule.

**I.      Evaluation of Pain**

The plaintiff first complains that the ALJ failed to make the proper analysis of his pain. The Court easily agrees.

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been

satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id*. at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The ALJ simply failed to perform either step as contemplated. It is true that the ALJ recited the plaintiff's allegations of pain. (Tr. 15-16.) The ALJ, however, never made any finding as to whether or not the plaintiff suffered a medical impairment which could reasonably be expected to produce such alleged pain. *Id*. at 591. Instead, the ALJ simply rejected the allegations as incredible: "Having considered all of the above, the undersigned finds that the claimant's allegations of a total inability to work are exaggerated and unsupported by the medical evidence of record." (Tr. 16.) Although the ALJ proceeded to find that the plaintiff's "subjective allegations [were] credible" in certain respects, *id*., as stated, the Fourth Circuit has instructed that to proceed directly to the credibility determination is improper.

The plaintiff specifically posits that his allegations of pain are consistent with the effects of two neck fusions, at separate levels of the neck, which a year after the second surgery resulted in a 40% impairment of the whole person, including significant use of the right arm and hand. Of course, it is not for the Court to conclude whether they are. But,

6

it was error for the ALJ not to. Specifically, the ALJ, on remand, should make an analysis of the *objective evidence of pain*. *See Craig*, 76 F.3d at 595 (holding that the credibility analysis "must take into account . . . any objective medical evidence of pain"). In other words, objectively speaking, could the fusions and the resulting physical diagnosis produce the complained of pain.

But even assuming the ALJ had performed the first step of the *Craig* analysis, his credibility determination was also deficient in its lack of specificity. As quoted above, the ALJ essentially made two conclusory statements concerning the plaintiff's credibility without any reference to the medical evidence which justified such determination. (Tr. 16.) An ALJ's credibility determinations "should refer specifically to the evidence informing the ALJ's conclusion." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *see also* SSR 96-7p. "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." *Hammond*, 765 F.2d at 426 (citations omitted).

Moreover, it is generally not enough for the ALJ to proceed in cursory fashion through any portion of the sequential inquiry. *See Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir.1986). The ALJ is required "to include in the text of [his] decision a statement of the reasons for that decision." *Id*. The decision of the ALJ, in this case, "fails to explain the reasons for the determination that" the plaintiff's allegations of plain were incredible. See *id*.

The Commissioner has put forward numerous examples of evidence which the ALJ *might* have used to discount the plaintiff's subjective complaints. But the Court agrees with the plaintiff that the evidence constitutes an impermissible post-hoc rationalization of the ALJ's decision. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from

advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). Because the ALJ failed to explain the basis of his credibility decision, the Court cannot say whether or not the Commissioner's evidence is actually reflective of the ALJ's own analysis.

For all these reasons, the ALJ's credibility analysis was insufficient and the case should be remanded for additional consideration in this regard.

## II.     Dr. Hutchinson and Dr. Faaberg

The plaintiff next complains that the ALJ relied extensively upon a vocational expert at the hearing to find that the plaintiff could perform work but completely ignored the vocational evaluation of Jean R. Hutchinson (Tr. 86-91). The plaintiff argues that the ALJ also impermissibly failed to discuss the independent medical evaluation of Dr. Jeffrey Faaberg, who is a pain management specialist and who performed an evaluation of the plaintiff. (Tr. 99-102.) It was Dr. Faaberg's conclusion that the plaintiff is incapable of returning to his previous employment unless he had vocational rehabilitation (Tr. 102), which the plaintiff contends has not been made available.

An ALJ, however, is not required to provide a written evaluation of every piece of evidence, but need only "minimally articulate" his reasoning so as to "make a bridge" between the evidence and his conclusions. *Fischer v. Barnhart*, 129 Fed. Appx. 297, 303 (7th Cir. 2005) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir.2004)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered") (citations omitted). Moreover, a formalistic factor-by-factor recitation of the evidence is simply not required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000);

*see also Dryer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that the ALJ is not required to specifically refer to every piece of evidence in the decision).  In other words, the Court does not presume simply because a piece of evidence is not specifically mentioned that it was, therefore, not considered.  In fact, the ALJ indicated that he considered all of the medical opinions of record and found that no treating or examining physician opined that the plaintiff was disabled.  (Tr. 16.)  As a general rule, such an averment is sufficient.

The plaintiff contends that the ALJ must make some specific findings concerning all *relevant* medical evidence and must explain expressly why he has accepted one medical opinion over another.  *See* 20 CFR §404.1527(d)(2) ("Regardless of its source, we will evaluate every medical opinion we receive."); SSR 96-8p (stating that the decision will "[c]ontain a thorough discussion and analysis of the objective medical and other evidence . . .").  The Court would agree that more is generally required for evidence favorable to the plaintiff but in conflict with the ALJ's determination.  *See King v. Califano*, 615 F.2d 1018 (4th Cir. 1980) (conflicting evidence); *Fargnoli v. Halter*, 247 F.3d 34, 42-43 (3rd 2001). The plaintiff's argument, however, presupposes that the reports of Drs. Hutchinson and Faaberg are (a) relevant and (b) in conflict with the ALJ's RFC assessment.  As to Dr. Faaberg, it seems clear that his opinion was limited to whether or not the plaintiff was capable of returning to his previous employment.  (Tr. 102.)  Consistent with the ALJ, Dr. Faaberg concluded that he was not.  *Id*.

Dr. Hutchinson's report, however, concluded that the plaintiff "is and remains unemployable."  (Tr. 90.)  Dr. Hutchinson further concluded that the plaintiff is "unable to compete on the open job market and unable to perform substantial gainful employment." *Id*.

Not only is Dr. Hutchinson's conclusion inconsistent with the ALJ's ultimate disability determination and, therefore, worthy of express consideration, but it is inconsistent with the ALJ's representation that "none of the claimant's treating or examining physicians has

9

opined that he is disabled" (Tr. 16).   The defendant contends that this error, if any, is harmless.  *See Ngaruith v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004).  Specifically, the plaintiff denounces the relevancy of Dr. Hutchinson's evaluation insofar as she only evaluated the plaintiff on one occasion, prior to the second surgery, and performed no objective tests.   The Court will simply not speculate as to the effect Dr. Hutchinson's opinion might have had on the ALJ.  While the report clearly seems less probative, it is not irrelevant.  And if the ALJ had, in fact, thoroughly considered the report of Dr. Hutchinson, as he implied (Tr. 16), then he would not have stated that none of the plaintiff's examining physicians found him disabled.

The Court does not believe that, alone, the ALJ's failure to specifically address Dr. Faaberg's report in his decision constitutes reversible error.  The Court is satisfied that the ALJ should make a more express consideration of Dr. Hutchinson's report.

## III.    SSR 00-4p

The plaintiff next contends that the jobs cited by the vocational expert (VE) were inconsistent with the job descriptions contained in the U.S. Department of Labor's Dictionary of Occupational Titles (4th ed., Rev. 1991) (DOT).  The plaintiff, therefore, argues that the ALJ's decision should be reversed because the ALJ did not specifically ask the vocational expert to identify and explain any conflicts with the DOT, as required in SSR 00-4p.  The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides

> a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.

The VE identified two jobs, which he believed the plaintiff could perform: sedentary surveillance system monitor and inspector, sorter, weight tester. (Tr. 233.) The VE identified these two jobs in response to a hypothetical, posed by the ALJ, that included a sit/stand option for the plaintiff. The plaintiff rightly points out that the DOT description of these jobs does not include a sit/stand option and contends, therefore, that the ALJ had a duty to investigate the conflict between the DOT description and the VE's testimony. Of course, the plaintiff also acknowledges that the ALJ identified this conflict on the record. (Tr. 234.) More importantly, the ALJ specifically asked the VE whether or not the jobs he identified, in fact, included a sit/stand option based upon his "personal and professional knowledge" and were otherwise consistent with the DOT *Id*. The VE agreed that they were. *Id*.

A VE's conflicting testimony can be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished). The Court is satisfied with the ALJ's determination that the VE's testimony, to the extent inconsistent with the DOT, was based upon his own personal and professional knowledge and experience. The plaintiff complains that the ALJ's familiarity with the VE resulted in a sloppy and ambiguous exchange on this point. The Court agrees that the questioning by the ALJ could have been more exacting; but it was not in error.

The remainder of the plaintiff's objections in regards to SSR 00-4p do not actually appear to relate to any conflict between the DOT and the VE's testimony. First, the plaintiff contends that the ALJ's residual functional capacity ("RFC") finding was inconsistent with the plaintiff's treating physician's opinion about his ability to perform any gripping with his right upper extremity ("RUE"). Specifically, the plaintiff complains that if Dr. Stovall's opinion

that the plaintiff could not perform any gripping with his RUE had been included in the hypothetical to the VE that it would have resulted in a finding of disability.  Of course, as the plaintiff acknowledges, the ALJ did pose such a limitation to the VE.  (Tr. 234.)

In response, the ALJ indicated that such a limitation would, in fact, eliminate the inspector position.  *Id*.  As to whether it would eliminate the surveillance position, the plaintiff contends that the colloguy between the ALJ and the VE is ambiguous to the point where the surveillance position must be disregarded as unsupported by any substantial evidence.  The Court agrees, in part, and disagrees, in part.

The exchange between the ALJ and the VE was as follows:

> Answer by the VE: I don't think you could do the inspector, weight tester.
>
> Question by the ALJ: Possibly the other one? Probably the other one or possibly?
>
> A: Yes.
>
> Q: Probably or possibly?
>
> A: I would say probably.
>
> ALJ: Ok, thank you.

(Tr. 234-35.)  The Court would agree that on its face the ALJ's meaning is not entirely clear. In context, the Court would be inclined to interpret it to mean that the plaintiff could "probably" perform the work of the surveillance monitor.  Critically, though, the testimony seems to be entirely clarified by a follow-up question later in the hearing.  After the plaintiff's attorney cross-examined the VE, the ALJ asked the VE, "Are there any other jobs at the sedentary level, *in addition to the surveillance system monitor*, that you could identify that would accommodate that restriction [one-functioning hand and arm] and the other ones that I gave originally?"  (Tr. 236 (emphasis added).)  The VE said that there were none but did not attempt to correct the ALJ by indicating that the plaintiff could not in fact perform the surveillance position with such a restriction.  *Id*.  Taken together the Court is confident that

the VE meant to testify that the plaintiff could perform the surveillance position with only one functional arm and that no further clarification by the ALJ was necessary.

The plaintiff complains further that the surveillance position should be rejected because the ALJ failed to make a specific finding in his decision that it was consistent with the RFC assessment of Dr. Stovall.  The VE's testimony in regards to the surveillance position was consistent with Dr. Stovall's opinion, as discussed above, and the ALJ indicated that he concurred with that opinion in regards to the plaintiff's ability to use the RUE.  (Tr. 17.)  The ALJ was not obligated to do more.

The Court would note that the ALJ's acceptance of the inspector position is not consistent with his own decision or the testimony of the VE and, therefore, is not supported by substantial evidence.  The VE testified that the inspector position was eliminated if the plaintiff could not use his RUE.  (Tr. 234.)  The ALJ adopted the opinion of Dr. Stovall that the plaintiff could not grip with his right hand.  (Tr. 17.)  Accordingly, that position could not support a finding of not disabled.

The error is harmless, however, because there is substantial evidence to support the ALJ's determination that the surveillance position could be performed by the plaintiff, namely, the testimony of the VE.

## IV.     Treating Physician

The plaintiff finally complains that the ALJ violated the treating physician rule by not fully crediting the opinion of Dr. Stovall that the plaintiff could not grip with his RUE. Specifically, the ALJ's RFC included the finding that the plaintiff could perform "no more than occasional fingering and handling with the dominant right hand/arm."  (Tr. 17.)  The plaintiff contends that this finding is in conflict with Dr. Stovall's opinion that the plaintiff could not grip at all with his right hand.

As an initial matter and as stated above, the ALJ expressly adopted the opinion of Dr. Stovall as to the plaintiff's RUE.  *Id*.  The plaintiff acknowledges as much.  It is true that the medical opinion of a treating physician is entitled to controlling weight if it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001).  A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

The error, if any at all, is in the slight ambiguity created between the ALJ's RFC and his express adoption of Dr. Stovall's opinion.  The plaintiff tends to focus on the fact that the ALJ determined that the plaintiff could handle and finger with his right hand "occasionally."  The plaintiff protests that this finding means 1/3 of the work day.  The Court believes the real conflict lies in whether the phrase "handling and fingering" employed by the ALJ implies the same activity level implied by Dr. Stovall's use of the word "gripping."  If there is an answer to this question in the Record or regulations the parties have not directed the Court's attention to it.  Regardless, the Court finds that there is enough ambiguity between the RFC and the ALJ's crediting of Dr. Stovall's position that clarification should be made on remand.

If the ALJ has, in fact, modified the RFC recommended by Dr. Stovall as to the plaintiff's RUE he simply needs to identify upon what basis such modification is justified.

### **CONCLUSION AND RECOMMENDATION**

Therefore, it is recommended that the Commissioner's decision be reversed, with a remand of the cause to the Commissioner for further proceedings as set forth above.

IT IS SO RECOMMENDED.

s/ Bruce H. Hendricks<br>
United States Magistrate Judge

December 20, 2006<br>
Greenville, South Carolina